UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

ROBIN LYNN SPILLERS,       )
       )
    Plaintiff,       )
       )   No. 2:14-cv-00106
v.       )   Judge Sharp
       )   Magistrate Judge Brown
CAROLYN W. COLVIN,       )
ACTING COMMISSIONER       )
OF SOCIAL SECURITY,       )
       )
    Defendant.       )

To: The Honorable Kevin H Sharp, Chief United States District Judge

## REPORT AND RECOMMENDATION

The Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of the Social Security Commissioner's denial of her application for period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423(a). The Magistrate Judge **RECOMMENDS** that the Plaintiff's Motion for Judgment on the Administrative Record (Docket Entry 19) be **DENIED** and that the Commissioner's decision be **AFFIRMED**.

## I.     PROCEDURAL HISTORY

The Plaintiff applied for period of disability and disability insurance benefits on October 12, 2010, alleging an onset date of October 8, 2008. (Docket Entry 15, p. 52).[1] She was denied initially and again upon reconsideration. (Docket Entry 15, p. 52-64). At the Plaintiff's request, an administrative hearing took place before an administrative law judge ("ALJ") on May 7, 2013. (Docket Entry 15, p. 26, 65). On July 26, 2013, the ALJ issued an unfavorable decision. (Docket Entry 15, p. 8). Although the ALJ found that the Plaintiff experienced severe

---

[1] Pages cited in the administrative record (Docket Entry 15) refer to the black Bates stamp at the lower right corner of the page.

1

impairments consisting of Crohn's disease, irritable bowel syndrome, other gastrointestinal disorders, and obesity, the ALJ concluded that these did not meet or medically equal a listed impairment. (Docket Entry 15, p. 13-16). The ALJ found that the Plaintiff retained the residual functional capacity ("RFC") to perform a broad range of medium work. (Docket Entry 15, p. 16). Based on this RFC and testimony from a vocational expert, the ALJ concluded that the Plaintiff could perform her past relevant work as a sales manager and as a sales representative, rendering the Plaintiff not disabled for the purposes of the Social Security Act. (Docket Entry 15, p. 20). The Plaintiff submitted additional evidence to the Appeals Council, consisting of records from Livingston Regional Hospital dated August 2013 to September 2013. (Docket Entry 15, p. 5). The Appeals Council declined to review the ALJ's decision. (Docket Entry 15, p. 1).

The Plaintiff subsequently filed a Complaint in this Court. (Docket Entry 1). The case was referred to the Magistrate Judge for a report and recommendation on dispositive motions. (Docket Entry 8). On April 10, 2015, the Plaintiff moved for judgement on the administrative record. (Docket Entry 19). The Defendant responded. (Docket Entry 21). The matter is properly before the Court.

## II.      REVIEW OF THE RECORD[2]

### A.  Relevant Medical Evidence

#### 1.   Reports Submitted by the Plaintiff

On April 19, 2011, the Plaintiff submitted a disability report, stating that she suffers from Crohn's disease and severe irritable bowel syndrome. (Docket Entry 15, p. 175-176). She provided information about her past employment, current medication, and medical history. (Docket Entry 15, p. 177-183).

---

[2] The contents of the administrative record (Docket Entry 15) are incorporated herein. Information pertinent to the Plaintiff's claims of error is discussed in greater detail.

The Plaintiff submitted a function report on May 24, 2011. (Docket Entry 15, p. 202). She stated that her daily activities included showering, cleaning the house, resting, eating, going to the store to get items needed around the house, resting, cooking dinner if she is not ill, getting things ready for the next day, and going to bed. (Docket Entry 15, p. 202). She stated that she wakes up several times a night and needs to sit up to calm her stomach. (Docket Entry 15, p. 203). She noted no trouble with personal care. (Docket Entry 15, p. 203). With assistance she makes meals on a daily basis. (Docket Entry 15, p. 204). She also performs household chores such as cleaning and laundry on a weekly basis and without assistance. (Docket Entry 15, p. 204). She can drive a car and go out on her own. (Docket Entry 15, p. 205). She goes shopping for household items and birthday gifts in stores and online on a monthly basis, usually taking an hour and a half to shop. (Docket Entry 15, p. 205). She has no difficulty handling money. (Docket Entry 15, p. 205). Her hobbies and interests consist of reading and watching television. (Docket Entry 15, p. 206). The Plaintiff reported she had no postural limitations but that she could only walk for fifteen minutes before needing a fifteen minute break. (Docket Entry 15, p. 207). She was not sure if she had difficulty paying attention but noted that she finishes what she starts and follows instructions well. (Docket Entry 15, p. 207).

On November 15, 2011, the Plaintiff filed another disability report. (Docket Entry 15, p. 222). She stated that her condition had declined and that she was visiting the hospital more frequently than before. (Docket Entry 15, p. 222). She also stated that her husband had to assist her with showering, shaving, and washing her hair and that she often could not get out of bed. (Docket Entry 15, p. 225).

The Plaintiff filed a disability report on January 17, 2012, stating that she was experiencing more fatigue and was having trouble getting out of bed as of December 1, 2011.

(Docket Entry 15, p. 236). She updated her medical history and submitted the list of her medications and side effects. (Docket Entry 15, p. 239-240, 242).

## 2. Third Party Function Report

The Plaintiff's daughter, Rachel Carnell, completed a third party function report for the Plaintiff on May 3, 2011. (Docket Entry 15, p. 193). With respect to the Plaintiff's daily activities, Ms. Carnell stated that the Plaintiff takes medicine, showers if she feels like it, lies around the house, and does light housework. (Docket Entry 15, p. 193). Ms. Carnell reported that the Plaintiff has trouble sleeping when the Plaintiff is sick or in pain. (Docket Entry 15, p. 194). If the Plaintiff has a spell of sickness, she cannot dress, bathe, care for her hair, shave, or feed herself. (Docket Entry 15, p. 194). Although the Plaintiff can make simple meals when she has energy, she cannot prepare full-course meals. (Docket Entry 15, p. 195). The Plaintiff can do laundry and light cleaning when she is not sick. (Docket Entry 15, p. 195). The Plaintiff can walk, drive a car, ride in a car, go outside alone, and shop in stores and online. (Docket Entry 15, p. 196). The Plaintiff's conditions have not interfered with her ability to handle money. (Docket Entry 15, p.196-197). The Plaintiff's hobbies and interests consist of watching television. (Docket Entry 15, p. 197).

According to Ms. Carnell, the Plaintiff's conditions affect her ability to lift more than twenty pounds and bend at the waist. (Docket Entry 15, p. 198). The Plaintiff can only walk about twenty minutes before needing a ten to fifteen minute rest. (Docket Entry 15, p. 198). Ms. Carnell did not find any problem with the Plaintiff's ability to pay attention or respond to written or spoken instructions. (Docket Entry 15, p. 198).

### 3. Work History Report

On May 24, 2011, the Plaintiff submitted a work history report. (Docket Entry 15, p. 212). She previously worked as a sales manager and as a customer service representative. (Docket Entry 15, p. 212). As a sales manager, she was required to walk for four hours a day, stand for eight hours a day, sit for three hours a day, climb for one hour a day, stoop for one hour a day, handle big objects and reach for two hours a day, and handle small objects eight hours a day. (Docket Entry 15, p. 213). The heaviest items she lifted weighted fifty pounds, and she frequently lifted less than ten pounds. (Docket Entry 15, p. 213). She listed the same exertion requirements for her customer service position. (Docket Entry 15, p. 214).

### 4. Medical Records

On March 19, 2008, the Plaintiff had a gastroenterology consultation at Baptist Memorial Hospital ("BMH"). (Docket Entry 15, p. 388). A hepatobiliary[3] scan on March 26, 2008 was anatomically normal. (Docket Entry 15, p. 353). A stomach atrium biopsy on March 31, 2008 revealed minor reactive gastropathy change, negative for H. pylori.[4] (Docket Entry 15, p. 354). An esophagogastroduodenoscopy ("EGD") on March 31, 2008 also found erythema and congestion in the antrum compatible with mild gastritis. (Docket Entry 15, p. 355). A small bowel series on May 28, 2008 found normal small bowel follow-through. (Docket Entry 15, p. 352).

The Plaintiff was seen at BMH on July 26, 2008 for complaints of nausea and vomiting. (Docket Entry 15, p. 377). On August 6, 2008, the Plaintiff had a normal magnetic resonance

---

[3] "Hepatobiliary" is defined as "pertaining to the liver and the bile or the bile ducts." Elsevier Saunders, *Dorland's Illustrated Medical Dictionary* 846 (32nd ed. 2012).

[4] "Reactive gastropathy" is defined as "damage to the gastric mucosa with epithelial change but not inflammation, commonly seen in areas near an ulcer." *Dorland's* at 765.

cholangiopancreatography ("MRCP") status post cholecystectomy[5] with mild associated choledochoectasia.[6] (Docket Entry 15, p. 350).

The Plaintiff was admitted to BMH on March 15, 2009 due to complaints of nausea with vomiting, abdominal pain, and shortness of breath, and was discharged two days later. (Docket Entry 15, p. 257). An EGD of the Plaintiff revealed reactive gastropathy. (Docket Entry 15, p. 263).

The Plaintiff was again admitted to BMH on December 3, 2009 and was discharged the next day. (Docket Entry 15, p. 265). She reported abdominal pain, nausea, shortness of breath, and vomiting. (Docket Entry15, p. 265). She denied chest pain, back pain, or limitation in her physical activity. (Docket Entry 15, p. 265). It was suggested that the Plaintiff's abdominal pain, nausea, and vomiting were due to irritable bowel syndrome. (Docket Entry 15, p. 266). The Plaintiff was discharged with instructions to take Zofran for nausea and vomiting and to take Lortab for abdominal pain. (Docket Entry 15, p. 266). It was noted that despite the Plaintiff's reports of nausea and vomiting episodes for the last twenty-eight years, the Plaintiff's appetite and weight were conserved. (Docket Entry 15, p. 275).

The Plaintiff was seen at the Memphis Gastroenterology Group on February 3, 2010. (Docket Entry 15, p. 310). She complained of severe abdominal pain, rating it a "10." (Docket Entry 15, p. 310). On February 11, 2010, the Plaintiff presented for an endoscopy. (Docket Entry 15, p. 300). Dr. Michael Levinson, M.D., found normal duodenal mucosa, negative for enteropathic injury, no evidence of gluten sensitive enteropathy, and no evidence of giardia. (Docket Entry 15, p. 297). Additionally, Dr. Levinson found reactive gastropathy, negative for chronic inflammatory gastritis and a silver strain negative for H. pylori. (Docket Entry 15, p.

---

[5] "[S]urgical removal of the gallbladder." *Dorland's* at 348.

[6] "[D]istention of the gallbladder." *Id.*

297). A small bowel series performed on February 11, 2010 was unremarkable. (Docket Entry 15, p. 318).

On March 5, 2010, the Plaintiff was again admitted to BMH due to complaints of severe abdominal pain, nausea, and vomiting. (Docket Entry 15, p. 286). She was discharged two days later. (Docket Entry 15, p. 290). The Plaintiff visited Dr. Levinson again on March 16, 2010. (Docket Entry 15, p. 306). The Plaintiff's abdominal pain was scored as a "4" and was waking the Plaintiff up in the early morning. (Docket Entry 15, p. 306). During a follow-up appointment on April 22, 2010, Dr. Levinson noted that the severity of the Plaintiff's abdominal pain was "4" and that the problem was improving. (Docket Entry 15, p. 302).

Next, the Plaintiff was admitted to BMH on July 28, 2010 due to complaints of nausea, vomiting, and abdominal pain. (Docket Entry 15, p. 323). She was discharged on August 1, 2010. (Docket Entry 15, p. 323). The etiology of her complaints was unclear. (Docket Entry 15, p. 323). The Plaintiff had a GI consultation at BMH on September 7, 2010. (Docket Entry 15, p. 382). October 2010 lab tests from Prometheus Therapeutics and Diagnostics showed that the Plaintiff had a "pattern consistent with IBD: Crohn's disease." (Docket Entry 15, p. 335). A capsule endoscopy performed on October 1, 2010 revealed "[e]ndoscopic picture most consistent with Crohn's enteritis."[7] (Docket Entry 15, p. 357).

The Plaintiff was treated at BMH for complaints of nausea, vomiting, shortness of breath, and abdominal pain on January 11, April 1, April 2, and April 3-5, 2011. (Docket Entry 15, p. 379, 397, 400, 480). An x-ray of the Plaintiff's chest on January 11, 2011 revealed no acute findings. (Docket Entry 15, p. 492). A CT of the Plaintiff's abdomen and pelvis on April 1, 2011 found no acute abnormality. (Docket Entry 15, p. 427). Dr. Eric Ormseth, M.D., did not believe

---

[7] "Enteritis" is defined as "inflammation of the intestine." *Dorland's* at 624.

her nausea, vomiting, and abdominal pain were related to Crohn's disease. (Docket Entry 15, p. 380).

On July 14, 2011, the Plaintiff presented for a consultation at BMH regarding her complaints of nausea and vomiting. (Docket Entry 15, p. 477). Dr. Christopher Griffith, M.D., suggested that the Plaintiff's condition was not related to her Crohn's disease and was "more functional in nature." (Docket Entry 15, p. 479).

The Plaintiff was seen by consultative examiner Dr. Michael Whelan, Ph.D., on July 30, 2011. (Docket Entry 15, p. 430). Dr. Whelan's report notes that the Plaintiff may suffer from a mild anxiety disorder which may affect her stomach. (Docket Entry 15, p. 432). Notably, the Plaintiff reported that "[s]he can engage in all normal tasks unless she is physically ill." (Docket Entry 15, p. 431).

Dr. Barry Siegel, M.D., consultatively examined the Plaintiff on August 19, 2011. (Docket Entry 15, p. 434). During a physical examination of the Plaintiff, Dr. Siegel found that the Plaintiff's back had a full range of motion and that the Plaintiff's gait, heel walk, toe walk, tandem walk, and squat were normal. (Docket Entry 15, p. 435). He assessed the Plaintiff to be able to occasionally or frequently lift and carry between twenty-five and fifty pounds except during episodes of nausea and vomiting. (Docket Entry 15, p. 436). She could also stand, walk, and sit for six hours in a workday, and she may have environmental limitations due to her mild COPD. (Docket Entry 15, p. 436).

Dr. Vicki Prosser, Ph.D., completed a psychiatric review technique for the Plaintiff on August 20, 2011. (Docket Entry 15, p. 440). Dr. Prosser found nonsevere impairments arising from an anxiety-related disorder. (Docket Entry 15, p. 440). Dr. Prosser found no episodes of

decompensation and mild limitations in the Plaintiff's activities of daily living, ability to maintain social function, and ability to concentrate. (Docket Entry 15, p. 450).

The Plaintiff was next admitted to BMH on August 24, 2011 due to complaints of nausea, vomiting, and abdominal pain, and she was discharged on August 27, 2011. (Docket Entry 15, p. 454). X-rays of the Plaintiff's abdomen and chest were taken on August 24, 2011, revealing an unremarkable study and negative findings. (Docket Entry 15, p. 465-466). During that same visit, the Plaintiff had a gastroenterology consultation with Dr. Ormseth. (Docket Entry 15, p. 456). Dr. Ormseth again expressed his impression that the Plaintiff's cyclic nausea and vomiting were not related to her Crohn's disease. (Docket Entry 15, p. 457). Dr. Ormseth noted that the Plaintiff's episodes are generally resolved in one to three days. (Docket Entry 15, p. 457).

On September 9, 2011, the Plaintiff presented to BMH for a consultation regarding her complaints of nausea, vomiting, and abdominal pain. (Docket Entry 15, p. 474). She was admitted to BMH on September 25, 2011 due to increased abdominal pain and was discharged on September 28, 2011. (Docket Entry 15, p. 494). X-rays of the Plaintiff's abdomen and chest were taken during this visit, and they revealed no acute abnormality. (Docket Entry 15, p. 506-507).

The Plaintiff was treated at Gastro One on April 28, 2011, July 21, 2011, September 14, 2011, and October 6, 2011 in relation to the Plaintiff's abdominal pain. (Docket Entry 15, p. 527, 529, 532, 534). A capsule endoscopy was performed on November 10, 2011. (Docket Entry 15, p. 514). Among the findings were "[m]ultiple small, punched out, fibrin covered ulcers . . . in proximal small bowel." (Docket Entry 15, p. 514).

Dr. Barry Politi, M.D., performed a consultative examination of the Plaintiff on November 21, 2012. (Docket Entry 15, p. 541). After summarizing the Plaintiff's medical

history, Dr. Politi commented that he did not think the Plaintiff was disabled by her bowel disease. (Docket Entry 15, p. 543). Dr. Politi also opined that the Plaintiff could frequently lift or carry fifty pounds and that the Plaintiff's ability to stand and walk was not limited. (Docket Entry 15, p. 545). Dr. Politi found that the Plaintiff could occasionally climb and could frequently balance, stoop, crouch, kneel, and crawl. (Docket Entry 15, p. 546). According to Dr. Politi, severe climbing and exertion may be difficult for the Plaintiff due to her longtime use of tobacco and chance of having COPD. (Docket Entry 15, p. 546). Dr. Politi found no limitations in the Plaintiff's gross manipulation, fine manipulation, skin receptors, ability to push or pull, seeing, hearing, or speaking. (Docket Entry 15, p. 546-547). Without explanation, he marked that the Plaintiff could occasionally reach in all directions. (Docket Entry 15, p. 546). He opined that the Plaintiff's COPD and smoking history would limit her exposure to dust, odors, fumes, and pulmonary irritants. (Docket Entry 15, p. 548).

The Plaintiff was admitted to Livingston Regional Hospital on December 15, 2012, and was later discharged the same day against medical advice. (Docket Entry 15, p. 620, 623). She complained of chest pain. (Docket Entry 15, p. 621). An EKG came back abnormal. (Docket Entry 15, p. 628). A CT of the Plaintiff's abdomen and pelvis on December 15, 2012 revealed no acute findings. (Docket Entry 15, p. 632). An x-ray of the Plaintiff's chest revealed mild right basilar atelectasis but was otherwise negative. (Docket Entry 15, p. 633). On December 16, 2012, the Plaintiff was treated at Livingston Regional Hospital for complaints of abdominal pain, nausea, and vomiting. (Docket Entry 15, p. 614-615). An x-ray of the Plaintiff's abdomen revealed no acute findings. (Docket Entry 15, p. 619). The Plaintiff was next admitted to Livingston Regional Hospital from December 17, 2012 to December 21, 2012. (Docket Entry 15, p. 634). She complained of abdominal pain and some nausea but no vomiting. (Docket Entry 15,

p. 635). A CT of the Plaintiff's abdomen and pelvis on December 18, 2012 revealed no acute findings, nonobstructive bowel pattern with no areas of bowel inflammation identified, and a normal appendix. (Docket Entry 15, p. 645).

The Plaintiff was treated for abdominal pain at Livingston Regional Hospital on January 20, February 3, February 14, February 17, April 11, and April 17, 2013. (Docket Entry 15, p. 556-557, 567-568, 578-579, 586-587, 596-597, 604-605). A CT of the Plaintiff's abdomen and pelvis on January 20, 2013 revealed no acute or significant interval findings. (Docket Entry 15, p. 613). An x-ray of the Plaintiff's abdomen on February 14, 2013 revealed no acute findings and a nonobstructive bowel pattern. (Docket Entry 15, p. 595). X-rays of the Plaintiff's abdomen and chest on April 11, 2013 revealed no acute findings. (Docket Entry 15, p. 577).

Additional medical records from Livingston Regional Hospital dated August 2013 to September 2013 were submitted to the Appeals Council. (Docket Entry 15, p. 621-801). As discussed below, these records were not submitted to the ALJ and are, therefore, not evaluated in determining whether the Commissioner's decision is supported by substantial evidence.

The Plaintiff presented to Livingston Regional Hospital on August 21, 2013, complaining of abdominal pain, nausea, and vomiting, and was discharged the next day. (Docket Entry 15, p. 760). It was noted that the Plaintiff did not display "any signs or symptoms of a Crohn's flair" and that "a Crohn's flair [was] unlikely." (Docket Entry 15, p. 762). Instead, Dr. James Tompkins, M.D., suggested that the Plaintiff was suffering from a stomach virus. (Docket Entry 15, p. 762). On August 23 and 25, 2013, the Plaintiff presented to Livingston Regional Hospital but was not admitted. (Docket Entry 15, p. 674, 679, 683). CTs of the Plaintiff's abdomen and pelvis on those days were unremarkable. (Docket Entry 15, p. 682, 695). The Plaintiff presented again on August 27, 2013, but was discharged several hours later. (Docket Entry 15, p. 662,

668). On August 28, 2013, the Plaintiff presented to Livingston Regional Hospital. (Docket Entry 15, p. 701). It was noted that the Plaintiff's "history is not consistent with lab results." (Docket Entry 15, p. 706). Last, the Plaintiff was admitted for evaluation from August 29, 2013 through September 1, 2013. (Docket Entry 15, p. 696). On August 31, 2013, it was noted that the Plaintiff was feeling better, had requested food, had less pain, and had no nausea or vomiting. (Docket Entry 15, p. 710).

**B. The Administrative Hearing**

The Plaintiff testified that she suffers from pain and discomfort resulting from Crohn's disease which upsets her stomach and increases the frequency of her trips to the restroom. (Docket Entry 15, p. 32). She stated that since October 2008 she has experienced episodes of heightened nausea, vomiting, and abdominal pain about once a month lasting from four days to one week. (Docket Entry 15, p. 33). She rated these episodes a "ten" on a scale of zero to ten, with ten being described "as if a person were hit by a truck." (Docket Entry 15, p. 33). During these episodes, she reported, she remained in bed and can barely function. (Docket Entry 15, p. 36-37). She stated that she had gone to the hospital with these conditions around seven to eight times within the past six months. (Docket Entry 15, p. 43). According to the Plaintiff, the hospital treated her with Phenergan, an intravenous drip, and pain medicine, and told her she needed to wait for the symptoms to pass. (Docket Entry 15, p. 43-44).

She takes Lortab to ease her abdominal pain, but the pain is only lowered to a six out of ten. (Docket Entry 15, p. 34). Even while taking Lortab, she stated that her abdominal pain interferes with her attention and concentration. (Docket Entry 15, p. 34-35). She stated that her other medication causes the side effects of fatigue, lack of energy, and sleepiness. (Docket Entry 15, p. 35). According to the Plaintiff, her doctors and nurse practitioners had not suggested other

medical treatment to control her pain. (Docket Entry 15, p. 35). Although the Plaintiff had tried drinking peach juice to control her pain, that home remedy had not worked. (Docket Entry 15, p. 36). Even when not experiencing level ten episodes of abdominal pain, the Plaintiff testified that she experiences nausea, vomiting, and abdominal pain at a pain level of six throughout the remainder of the month and that she could hardly do anything during the entire month. (Docket Entry 15, p. 37).

The Plaintiff testified that she can stand comfortably for about ten minutes at a time. (Docket Entry 15, p. 38). She stated that this limitation arose from her back and legs. (Docket Entry 15, p. 38). Additionally, the Plaintiff stated she could walk comfortably for about ten to fifteen minutes and sit for about ten to fifteen minutes. (Docket Entry 15, p. 38). She stated that prolonged sitting caused numbness in her legs. (Docket Entry 15, p. 39). She stated that she would have difficulty lifting and carrying a one-gallon plastic jug of milk or juice. (Docket Entry 15, p. 39). Bending at the waist was difficult and not reasonably comfortable. (Docket Entry 15, p. 39). Climbing down ten to twelve steps was not comfortable on most days. (Docket Entry 15, p. 39). She stated she could not comfortably squat and stand. (Docket Entry 15, p. 39-40). Stooping was reasonably comfortable. (Docket Entry 15, p. 40).

During an ordinary day in which the Plaintiff is not experiencing a level ten episode of pain, the Plaintiff testified that she watches television and that due to fatigue and lack of energy she cannot comfortably mop, sweep, vacuum, do laundry, wash dishes, make her bed, or cook a family meal. (Docket Entry 15, p. 40-42). She also stated that she sometimes needs assistance getting dressed due to her arms. (Docket Entry 15, p. 42).

The vocational expert described the Plaintiff's past two jobs: (1) sales manager generally listed as a sedentary job but performed by the Plaintiff at the medium level and (2) sales

representative generally listed as a light job but performed by the Plaintiff at the medium level. (Docket Entry 15, p. 44-45). The ALJ presented the vocational expert with several hypotheticals, each based on the following: the Plaintiff can perform a range of medium work; she can occasionally lift fifty pounds, frequently lift twenty-five pounds, stand and walk for six hours and sit for six hours in an eight-hour workday, and frequently climb, balance, stoop, crouch, kneel, and crawl. (Docket Entry 15, p. 46-47). First, if the Plaintiff would be bedridden once a month for four to seven days at a time, she could not return to her past work and could not perform other work. (Docket Entry 15, p. 46). Second, if the Plaintiff was only bedridden two to three days every two to three months, the Plaintiff could return to both of her past jobs as she performed them and as they are customarily performed. (Docket Entry 15, p. 47).

### III.     Conclusions of Law

#### A.  Standard of Review

The Commissioner's decision is reviewed to determine (1) whether the Commissioner's decision is supported by substantial evidence and (2) whether the Commissioner's decision was made pursuant to the correct legal standards. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (citation omitted). Substantial evidence has been quantified as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001)). "If the Commissioner's decision is supported by substantial evidence, we must defer to that decision 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (quoting *Longworth v. Comm'r Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005)). Even if the record appears to justify the ALJ's conclusions,

"an ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence."

*Gayheart*, 710 F.3d at 374 (quoting *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)).

## B. Administrative Proceedings

Receipt of disability benefits is conditioned on the claimant being "disabled" within the meaning of the Social Security Act. 42 U.S.C. § 423(a)(1)(E). In this context, disability refers to "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 423(d)(1)(A). The Commissioner uses the following five-step process to determine if an individual is disabled:

> (1) If the claimant is engaged in substantial gainful activity, the claimant is not disabled.
>
> (2) If the claimant's physical or mental impairment, or combination of impairments, is not severe or does not meet the applicable duration requirement, the claimant is not disabled.
>
> (3) If the claimant's impairment(s) meets or equals a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1 and meets the duration requirement, the claimant is presumed disabled, and the inquiry ends.
>
> (4) Based on the claimant's RFC, if the claimant can still perform past relevant work, the claimant is not disabled.
>
> (5) If the claimant's RFC, age, education, and work experience indicate that the claimant can perform other work, the claimant is not disabled.

20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof for the first four steps; the burden shifts to the Commissioner at the fifth step. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

# IV.    Analysis

## A.  The ALJ's RFC Assessment is Supported by Substantial Evidence

The Plaintiff contends that the ALJ's RFC assessment inaccurately minimizes the frequency of the Plaintiff's gastric "flare ups." (Docket Entry 20, p. 8). While the ALJ concluded that the Plaintiff "experiences episodes of gastrointestinal distress which last for two to three days every two to three months during which she is unable to perform activities of daily living," (Docket Entry 15, p. 16), the Plaintiff argues that the ALJ should have found that the Plaintiff suffers "an average of two flare ups per month." (Docket Entry 20, p. 8). According to the Plaintiff, the ALJ committed this error by failing to consider the Livingston Tennessee Hospital and Baptist Memorial Hospital records and by not giving enough weight to the Plaintiff's subjective complaints of pain and discomfort. (Docket Entry 20, p. 8-12).

"In many disability cases, the cause of the disability is not necessarily the underlying condition itself, but rather the symptoms associated with the condition." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citations omitted). Symptoms, such as pain, are evaluated in two steps. First, there must be a "medically determinable impairment that could reasonably be expected to produce [the Plaintiff's] symptoms, such as pain." 20 C.F.R. § 404.1529(b). The ALJ concluded that the Plaintiff satisfied this step. (Docket Entry 15, p. 17).

At issue is the second step at which the ALJ evaluated the intensity and persistence of the Plaintiff's symptoms. The ALJ was required to consider all of the evidence submitted by the Plaintiff, including the Plaintiff's statements, objective medical evidence, opinions from treating and nontreating sources, and other persons. 20 C.F.R. § 404.1529(c)(1). In addition to assessing the Plaintiff's objective medical evidence, the ALJ was required to consider the following factors: (1) the Plaintiff's daily activities; (2) the "location, duration, frequency, and intensity of

[the Plaintiff's] symptoms;" (3) "[p]recipitating and aggravating factors;" (4) the effectiveness and side effects of medication taken to alleviate the symptoms; (5) other treatment received for the symptoms; (6) measures used to relieve symptoms; and (7) other relevant factors. 20 C.F.R. § 404.1529(c)(2)-(3). While considering this information, the ALJ was expected to identify inconsistencies in the evidence. 20 C.F.R. § 404.1529(c)(4). The credibility assessment required by 20 C.F.R. § 404.1529(c)(4) is further explained in Social Security Ruling ("SSR") 96-7P. 1996 WL 374186 (S.S.A. July 2, 1996). Although the ALJ, not the court system, is tasked with evaluating the witness' credibility, credibility findings must be "grounded in the evidence and articulated in the determination or decision." SSR 96-7P, 1996 WL 374186 at *4; *Rogers*, 486 F.3d at 247. Credibility findings made by the ALJ are given great deference. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004). The ALJ should consider the consistency of the Plaintiff's statements, the contents of the medical records, the Plaintiff's medical treatment history, other sources of information such as family and friends, observations of the Plaintiff, and State Agency findings. SSR 96-7P, 1996 WL 374186 at *5-8.

Substantial evidence supports the ALJ's decision regarding the intensity and persistence of the Plaintiff's gastrointestinal conditions. It is evident that the ALJ considered the entirety of the record. The ALJ, however, chose to give little weight to the Plaintiff's complaints of pain, nausea, and vomiting. While the Plaintiff is correct in asserting that she visited the hospital frequently from 2009 through 2013, the sheer number of trips to the hospital is not dispositive of the issue. Instead, the ALJ was required to analyze the Plaintiff's "symptoms, including pain, and the extent to which [the Plaintiff's] symptoms can reasonably be accepted as consistent with the

*objective medical evidence*[8] and ***other evidence***[9]" in determining the limitations imposed by her medically determinable impairments. 20 C.F.R. § 404.1529(a), (c)(4). The ALJ did so.

First discussed in the ALJ's RFC analysis was the Plaintiff's hearing testimony. (Docket Entry 15, p. 16). Next, the ALJ summarized the generally negative findings of the objective diagnostic testing performed on the Plaintiff. (Docket Entry 15, p. 17). The ALJ noted that medication for Crohn's disease had not improved the Plaintiff's symptoms. (Docket Entry 15, p. 17). Significantly, the ALJ noted, Dr. Ormseth and Dr. Griffeth from Baptist Memorial Hospital opined that the Plaintiff's reported symptoms were likely not related to Crohn's disease and were more functional in nature. (Docket Entry 15, p. 17). The ALJ next reviewed the consultative reports submitted by Dr. Siegel and Dr. Politi which both contained negative objective findings. (Docket Entry 15, p. 17).

Following that discussion, the ALJ performed a thorough credibility assessment, finding the Plaintiff's "subjective complaints and hearing testimony lacking in credibility." (Docket Entry 15, p. 18-19). Although the Plaintiff complained of "extensive debilitating periods of nausea and vomiting," the Plaintiff's most recent treatment records showed that the Plaintiff maintained the diagnostic criteria for obesity. (Docket Entry 15, p. 18). The Plaintiff had also alleged severe standing, sitting, and lifting limitations during the administrative hearing, yet nothing in the record substantiated these claims. (Docket Entry 15, p. 18). Whereas the Plaintiff had testified at the administrative hearing that she cannot perform many activities of daily living,

---

[8] Objective medical evidence includes medical signs, which are "anatomical, physiological, or psychological abnormalities which can be observed . . . [which must] must be shown by medically acceptable clinical diagnostic techniques," and laboratory findings, which are "anatomical, physiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques." 20 C.F.R. § 404.1528(b)-(c).

[9] Other evidence may consist of "statements or reports from [the Plaintiff], [the Plaintiff's] treating or nontreating source, and others about [the Plaintiff's] medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how [the Plaintiff's] impairment(s) and any related symptoms affect [the Plaintiff's] ability to work." 20 C.F.R. § 404.1529(a).

the ALJ pointed out inconsistent statements in the record where the Plaintiff had made remarks to the contrary. (Docket Entry 15, p. 18). The ALJ ended with a discussion of his credibility findings regarding the consultative examiners and the report submitted by the Plaintiff's daughter. The ALJ properly supported this credibility assessment with the evidence in the record and fully explained this assessment in the decision. *See* SSR 96-7P, 1996 WL 374186 at *4. The ALJ's conclusions were procedurally proper and are supported by substantial evidence.

**B. Recently Submitted Medical Records do not Justify a Sentence Six Remand**

The Plaintiff next alleges that the Appeals Council erred by not examining medical records submitted by the Plaintiff after the ALJ issued an unfavorable decision. (Docket Entry 20, p. 12). The Plaintiff is referring to medical records in Exhibit 22F from Livingston Regional Hospital dated August 2013 through September 2013. (Docket Entry 15, p. 660-801). Notably, these medical records were created after the ALJ issued an unfavorable decision on July 26, 2013. (Docket Entry 15, p. 8). Although the Plaintiff submitted these records to the Appeals Council, the Appeals Council found the information did not provide a basis for changing the ALJ's opinion. (Docket Entry 15, p. 2, 4). According to the Plaintiff, these medical records are "new and material evidence" which the Appeals Council failed to properly consider. (Docket Entry 20, p. 13-14).

It is well-established that the reviewing court may only consider the evidence presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007). New evidence may be considered, but only after a sentence six remand under 42 U.S.C. § 405(g). *Id.* at 513. A sentence six remand is available if the proponent shows that the evidence is (1) new, (2) material, and (3) there was good cause for not submitting it in the earlier proceeding. 42 U.S.C. § 405(g); *Bass*, 499 F.3d at

513. Evidence is "new" if it did not exist at the time of the administrative proceeding. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (citation omitted). New evidence is only "material" if it "would likely change the Commissioner's decision." *Bass*, 499 F.3d at 513 (citation omitted). "Good cause" exists if there is a reasonable justification for not acquiring the evidence before the administrative proceeding. *Foster*, 279 F.3d at 357. The burden of establishing a need for remand lies on the claimant. *Id.*

Even though the records in Exhibit 22F are likely "new" and "good cause" likely exists, the records are not "material." Upon review of the records in Exhibit 22F and upon consideration of the ALJ's treatment of the evidence in the record, it does not appear that admission of these records would likely change the Commissioner's decision. Much like the information in the records submitted to the ALJ, the records in Exhibit 22F reveal that the Plaintiff presented to Livingston Regional Hospital on numerous occasions complaining of abdominal pain, nausea, and vomiting. (Docket Entry 15, p. 696, 701, 662, 674, 683, 760). CTs of the Plaintiff's abdomen and pelvis on August 23 and 25, 2013 were unremarkable. (Docket Entry 15, p. 682, 695). The treatment records note that the Plaintiff's "history is not consistent with lab results." (Docket Entry 15, p. 706). Additionally, it was again noted that the Plaintiff did not display "any signs or symptoms of a Crohn's flair" and that "a Crohn's flair [was] unlikely." (Docket Entry 15, p. 762). The physician, Dr. James Tompkins, M.D., suggested that the Plaintiff was suffering from a stomach virus. (Docket Entry 15, p. 762).

The new records are consistent with the earlier records from Baptist Memorial Hospital and Livingston Regional Hospital, but nothing in the new records suggests that the Commissioner would come to a different decision if presented with them. Perhaps most significantly, the new records do not mend the credibility issues raised by the ALJ when

considering the earlier records. The medical records in Exhibit 22F are not "material" within the meaning of 42 U.S.C. § 405(g) and do not merit a sentence six remand.

## C.  The ALJ's Treatment of the Daughter's Report is Supported by Substantial Evidence

The Plaintiff believes the ALJ erred in giving little weight to the lay testimony of the Plaintiff's daughter, Ms. Carnell. (Docket Entry 20, p. 14). The ALJ proffered three reasons for this weight: first, Ms. Carnell is not medically trained and therefore "the accuracy of her report is questionable"; second, Ms. Carnell is an interested party and would be more likely to agree with the Plaintiff's complaints because of her affection for the Plaintiff; and third, Ms. Carnell's statement was inconsistent with the record evidence and opinions from acceptable medical sources. (Docket Entry 15, p. 19). The Plaintiff believes the ALJ's treatment of Ms. Carnell's report violated SSR 06-03P, SSR 83-20,[10] SSR 96-7P, and 20 C.F.R. § 404.1529(c)(3). (Docket Entry 20, p. 17). First, the Plaintiff argues that as an "other source," Ms. Carnell did not need to be medically trained to offer an opinion. (Docket Entry 20, p. 15). Second, the Plaintiff argues that familial "bias" is not a valid reason to disregard opinion evidence. (Docket Entry 20, p. 15-17). The Plaintiff did not directly address the ALJ's statement that Ms. Carnell's report was inconsistent with the evidence in the record.

Information from "other sources," such as family members, may assist the Commissioner in determining the severity of a medically determinable impairment. SSR 06-03P, 2006 WL 2329939, at *2 (S.S.A. Aug. 9, 2006); 20 C.F.R. § 404.1529(c)(3). Information submitted by a nonmedical source who has seen the claimant in a nonprofessional capacity, such as a family member, may be considered in light of "such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support

---

[10] As the Defendant pointed out, SSR 83-20, 1983-1991 Soc. Sec. Rep. Serv. 49, 1983 WL 31249 is concerned with determining the onset date of disability.

or refute the evidence." SSR 06-03P, 2006 WL 2329939, at *6. The ALJ should consider the evidence submitted by other sources and should explain the weight given to their opinions when their opinions may affect the case outcome. *Id.* The process of assessing the credibility of an individual's statement is provided for in SSR 96-7P, 1996 WL 374186.

It is true that Ms. Carnell did not need to be medically trained to offer evidence regarding the Plaintiff's medical conditions. The ALJ must consider information submitted by nonmedical sources, such as family members. *See* SSR 06-03P, 2006 WL 2329939, at *6.

The regulations do not require the ALJ to ignore the relationship between a claimant and a family member. Among other factors, the ALJ is expected to consider the "nature and extent of the relationship." *Id.* The ALJ did so here, noting that Ms. Carnell was likely more receptive to the Plaintiff's complaints than were disinterested third parties. (Docket Entry 15, p. 19).

Importantly, as permitted by SSR 06-03P, the ALJ found that Ms. Carnell's report was "inconsistent with the preponderance of the record evidence and with the opinions and observations expressed by acceptable medical sources." (Docket Entry 15, p. 19). For instance, the lifting and walking limitations identified by the Plaintiff and Ms. Carnell were rejected by the ALJ. The ALJ's assessment of the remainder of the record, including the Plaintiff's statements, treatment records, and the consultative examiners' opinions, supports the ALJ's RFC assessment and decision to give Ms. Carnell's report little weight. *See* SSR 06-03P, 2006 WL 2329939, at *6; SSR 96-7P, 1996 WL 374186, at *5-8.

This case presents a strikingly similar claim to one that was raised before the Honorable Judge Nixon in *Stevenson v. Colvin*, No. 3:12-CV-00462, 2014 WL 6462038 (M.D. Tenn. Nov. 17, 2014). The ALJ in *Stevenson* declined to give significant weight to the lay testimony of the claimant's boyfriend for the same three reasons that were given by the ALJ in this case, stating:

Mr. Casteel's testimony does not establish that the claimant is disabled. *Since he is not medically trained to make exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms, the accuracy of the testimony is questionable.* Moreover, by virtue of the relationship as a long time boyfriend of the claimant, *Mr. Casteel cannot be considered a disinterested third party witness whose testimony would not tend to be colored by affection for the claimant and a natural tendency to agree with the symptoms and limitations the claimant alleges.* Most importantly, significant weight cannot be given to the witness' testimony because it, like the claimant's, is simply *not consistent with the preponderance of the opinions and observations by physicians, psychologists, counselors and other providers in this case.*

*Id.* at *8 (emphasis added). Judge Nixon upheld the ALJ's decision in the following:

> As can be seen, the ALJ recounted Mr. Casteel's testimony, demonstrating that he did, in fact, consider it. As can also be seen, the ALJ explained his reasoning for not finding it entirely credible and for not according it significant weight. The ALJ, in his decision, also discussed Plaintiff's testimony and the medical evidence of record. *See* TR 20–26. The ALJ's finding that Mr. Casteel's testimony was "simply not consistent with the preponderance of the opinions and observations by physicians, psychologists, counselors and other providers in this case" was supported by the remainder of the ALJ's decision. Contrary to Plaintiffs assertions, the ALJ's evaluation of Mr. Casteel's testimony and weighing of his credibility was proper, and his determinations that Mr. Casteel's testimony was not fully credible and could not be accorded significant weight were supported by substantial evidence.

*Id.* at *9. In the words of Judge Nixon, "the ALJ's decision was properly supported by 'substantial evidence.' The ALJ's decision, therefore, must stand." *Id.*

## D. The ALJ Correctly Determined That the Plaintiff Can Perform Past Relevant Work

Last, the Plaintiff alleges that the ALJ did not comply with SSR 82-62 in determining that the Plaintiff can perform her past relevant work. (Docket Entry 20, p. 17).

A claimant is not "disabled" if the claimant can perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). This is determined by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. § 404.1560(b). To gauge the physical and mental demands of the claimant's past relevant work, the ALJ considers information submitted by the claimant as well as information provided by a vocational expert or

the Dictionary of Occupational Titles ("DOT"). 20 C.F.R. § 404.1560(b)(2); *see also* SSR 82-62, 1975-1982 Soc. Sec. Rep. Serv. 809, 1982 WL 31386, at *3 (S.S.A. Jan. 1, 1982). As this finding may be determinative of the claimant's claim of disability, the ALJ must have sufficient information to make this decision and must explain the decision. SSR 82-62, 1982 WL 31386, at *3-4. The decision must contain findings of fact regarding (1) the claimant's RFC, (2) the physical and mental demands of the claimant's past relevant jobs, and (3) whether the claimant's RFC would permit a return to her past relevant jobs. *Id.* at *4.

The ALJ's conclusion that the Plaintiff can return to her past relevant work as a sales manager and as a sales representative was done in accordance with the applicable rules and is supported by substantial evidence. First, the ALJ's decision contains extensive findings regarding the Plaintiff's RFC. (Docket Entry 15, p. 16-19). The ALJ also considered the physical and mental demands of the Plaintiff's past relevant jobs using testimony proffered by the vocational expert which was based on information submitted by the Plaintiff and information in the DOT. The Plaintiff submitted a work history report on May 24, 2011, in which she described the demands of her previous jobs as a sales manager and a customer service representative. (Docket Entry 15, p. 212-214). At the administrative hearing, the vocational expert testified that he had reviewed the exhibits in the Plaintiff's record. (Docket Entry 15, p. 44). Based on this information, the vocational expert required no additional evidence before offering his expert testimony. (Docket Entry 15, p. 44). According to the vocational expert, the Plaintiff was fifty years old, had a twelfth grade education, and performed the past jobs of sales manager and sales representative at the medium level. (Docket Entry 15, p. 44-45). The vocational expert noted that the DOT generally defines the job of sales manager as sedentary and the job of sales representative as light. (Docket Entry 15, p. 44-45). The vocational expert also identified the

Plaintiff's transferable skills and noted that the skills would readily transfer to light and sedentary work. (Docket Entry 15, p. 45). Last, the ALJ's decision explains that the Plaintiff is able to perform her past relevant work based on her RFC. (Docket Entry 15, p. 20). When presented with a hypothetical featuring the Plaintiff's RFC, the vocational expert testified that the Plaintiff could return to both of her past jobs as she performed them and as they are customarily performed. (Docket Entry 15, p. 47-48). The ALJ properly determined that the Plaintiff can perform her past relevant work.

## V.      RECOMMENDATION

The Magistrate Judge **RECOMMENDS** that the Plaintiff's Motion for Judgment on the Administrative Record (Docket Entry 19) be **DENIED** and that the Commissioner's decision be **AFFIRMED**.

Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen days, after being served with a copy of this Report and Recommendation (R&R) to serve and file written objections to the findings and recommendation proposed herein. A party shall respond to the objecting party's objections to this R&R within fourteen days after being served with a copy thereof. Failure to file specific objections within fourteen days of receipt of this R&R may constitute a waiver of further appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

**ENTERED** this 29th day of January, 2016.

s/ Joe B. Brown
Joe B. Brown
U.S. Magistrate Judge